656 So.2d 104 (1995)
Barry TAYLOR
v.
STATE of Mississippi.
No. 91-KA-00676-SCT.
Supreme Court of Mississippi.
June 1, 1995.
*105 Minor F. Buchanan, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, Ellen Y. Dale, Ridgeland, for appellee.
En Banc.
BANKS, Justice, for the Court:
This is another drug case in which we are called upon to consider the sufficiency of the evidence on the question of intent. We are also asked to determine whether the brother of an assistant prosecutor for the district in question may survive a challenge for cause. We find the evidence of intent non-existent and that the challenge for cause should have been sustained. We find all other issues without merit and reverse and remand for a new trial on the issue of possession of a controlled substance.

I.
On July 20, 1990, three members of the Jackson Police Department's street corner crack cocaine unit were on patrol in the Bailey Avenue and Mayes Street area. The area is known for heavy crack cocaine dealing. Officer Preston Carter was travelling west on Mayes Street from Bailey Avenue in an undercover car. Two of Carter's partners (Stewart Tharpe and Max Mayes) were following him in an unmarked vehicle.
As Carter neared Lampton Street, which intersects with Mayes, a brown Buick caught his eyes. Carter recognized the car as that of alleged drug dealer Roderick Russell, who was known for frequenting the area. When it occurred to Carter that a drug deal might be taking place, he radioed his partners and alerted them to watch the scene with him.
Carter testified that as he drove closer to the Buick, he saw Taylor standing at the front door of the passenger side of the vehicle *106 with his left arm partially inside the window. His testimony was corroborated by Mayes and Tharpe. Mayes testified that after Carter radioed and told them to be on the look-out, he saw Taylor's hand extend into the front window of the passenger side of the Buick. Mayes also testified that Taylor had some money in his right hand. Tharpe testified that he was watching the scene because he saw Taylor standing at the front door of the passenger side of the Buick with his hand extended in the window, before Carter radioed.
As he moved closer to the Buick, Carter focused his attention on the car, its occupants, and the two males standing at the front doors of the car. In addition to Taylor, Carter saw McArthur Williams, a juvenile. Williams was seated on the front seat of the passenger side. Russell, the alleged drug dealer, was seated in the driver's seat and Melvin McLaurin was standing outside of the driver's door.
When Carter pulled up behind the Buick to the left, he jumped out of his car and ran to the driver's side of the car to detain McLaurin and Russell. As Carter approached the car, McLaurin stepped back, and Carter saw Russell stuff something between the seat and the door. Carter ordered Russell to grasp the steering wheel with both hands. Carter also saw McArthur Williams, who was seated on the passenger side of the front seat, throw something to the floor of the car.
Carter grabbed McLaurin, who was standing outside the driver's side of the car. McLaurin dropped a cigarette lighter and a single rock of crack cocaine on the ground. Carter later recovered a twenty dollar bill and an empty match box, which contained residue of procaine and cocaine from the driver's side of the car where Russell was seated. The officers also retrieved one rock of crack cocaine from the side of the car where Williams was seated.
While Carter was detaining McLaurin and Russell, his partners moved in on Taylor and Williams. As Tharpe exited the car, Taylor turned and looked back at him and then turned away from Tharpe and threw something under the car. Tharpe later got down on his knees and retrieved some white tissue which contained four rocks of crack cocaine. Twenty-six dollars, believed to belong to Taylor, was seized near the place where he was standing and Taylor's person.
On October 10, 1990, Barry Taylor was indicted for possession of cocaine with intent to distribute. He was tried and found guilty as charged and sentenced to ten years imprisonment, with seven years suspended.
At trial, Carter and his partners described the way in which drug dealers sell crack cocaine on street corners in about twenty areas throughout Jackson. Generally, drug dealers stand on the corner with a small quantity of crack in their hands or in a small container. When a potential customer drives by, the dealer walks out to the curb and shows the customer what he has.
Carter testified that the activity surrounding the Buick on July 20, 1990, was consistent with that of drug dealers selling crack cocaine. However, there was no direct evidence that Taylor had sold or intended to sell crack cocaine on the day in question. Rather, the state relied on the circumstances surrounding Taylor's arrest to show that he intended to distribute the drug.
At the close of the state's case-in-chief, Taylor entered a motion for a directed verdict on the grounds that the state had failed to prove that Taylor had cocaine in his possession and intended to distribute it. The motion was denied.
As part of his defense, Taylor called McLaurin. During cross-examination, the state was allowed to introduce evidence of McLaurin's prior grand larceny conviction. Taylor also took the stand.
McLaurin testified that he was walking down Emerson Road when he saw Taylor's white Camaro. McLaurin flagged Taylor down and asked him for a ride home. Taylor, who was headed home to Clinton from his job at Adcock and Campbell, an asphalt company, told McLaurin to get in the car.
McLaurin testified that when Taylor turned on Mayes Street, he spotted Russell and hollered out of the window and asked him for a ride home. Taylor stopped his car. *107 McLaurin got out. Taylor asked McLaurin if he had a light. McLaurin told Taylor "no" and went over to Russell's car and asked him if he had a light. Russell said "yes." McLaurin told Taylor to come and get the light. Taylor testified that he got out of his car and went to the passenger's side of Russell's car to get a light. As the young man, seated on the passenger side of the front seat was about to light his cigarette, Taylor said, the narcotics agents pulled up.
McLaurin and Taylor both testified that they did not see any drugs being handled near the Buick, nor did they see the police officers recover any crack cocaine. Although Taylor and McLaurin testified that Taylor was giving him a ride home, the state produced evidence that showed that the two men were travelling in a direction opposite to that of McLaurin's home at the time of their arrest.
Upon conviction, Taylor timely filed his notice of appeal to this Court and asserts error in the following particulars:
I.
The verdict of the jury is against the overwhelming weight of the evidence both as to the guilt for possession with intent and for not accepting the lesser included offense instruction of simply possession as shown by their verdict.
II.
The lower court erred in not striking for cause juror, Joseph C. Haynes, brother to Assistant District Attorney, Glenda Haynes, Esq.
III.
The lower court erred in granting state jury instruction No. 1.
IV.
The lower court erred in granting state jury instruction No. 3.
V.
The lower court erred in allowing the introduction of a prior grand larceny conviction of Melvin McLaurin.
VI.
The lower court erred in allowing the introduction of evidence over objection of Exhibit 2, 3 and 4.
VII.
The lower court erred in denying the defense's motion to dismiss at the conclusion of the state's case and in overruling the defendant's motion for a directed verdict at the conclusion of the trial.
VIII.
The lower court erred in disallowing the defense jury instruction No. 2.
IX.
The lower court erred in disallowing defense jury instruction No. 4.

II.
Taylor urges this Court to set aside the verdict of the jury and the sentence of the trial court as being against the overwhelming weight of the evidence. In truth, Taylor argues that the evidence was insufficient that he possessed cocaine with intent to distribute.
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial *108 evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
McFee v. State, 511 So.2d 130, 133-134 (Miss. 1987) citing Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984).
The question here is whether the evidence sufficiently established that Taylor possessed cocaine with the intent to distribute it. Taylor relies on Stringfield v. State, 588 So.2d 438 (Miss. 1991), in support of his contention that the evidence was insufficient. In Stringfield this Court held that proof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion.
There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell the cocaine, not that he might have such intent. It must be evidence in which a reasonable jury can sink its teeth.
We recognized that criminal intent may, and ordinarily can only be shown by surrounding circumstances. Stringfield, 588 So.2d at 441, citing Shive v. State, 507 So.2d 898, 900 (Miss. 1987); Boches v. State, 506 So.2d 254, 260 (Miss. 1987); Fisher v. State, 481 So.2d 203, 213 (Miss. 1985); Hollingsworth v. State, 392 So.2d 515, 517-518 (Miss. 1981); Stinson v. State, 375 So.2d 235, 236 (Miss. 1979); Ryals v. State, 305 So.2d 354, 356 (Miss. 1974); Shanklin v. State, 290 So.2d 625, 627 (Miss. 1974).
Taylor argues that the record is void of any evidence that he was in possession of cocaine with intent to distribute. However, the state points out that there were circumstances surrounding Taylor's arrest from which a jury could infer that Taylor possessed cocaine with intent to distribute. We disagree.
In Hicks v. State, 580 So.2d 1302 (Miss. 1991), this Court stated that "intent to distribute or dispense may be established by circumstantial evidence." Citing Hollingsworth v. State, 392 So.2d 515, 517 (Miss. 1981). Indeed, a jury may reasonably conclude that a defendant intended to unlawfully distribute a controlled substance, if the quantity or nature of the seized substance evidences an intent to distribute  as opposed to an intent to merely possess for personal use. Boches v. State, 506 So.2d 254, 260 (Miss. 1987); Coyne v. State, 484 So.2d 1018, 1021 (Miss. 1986); and Keys v. State, 478 So.2d 266 (Miss. 1985). Where the quantity or nature is such that it merely reflects possession for personal use as an intent to distribute, then only a suspicion of intent is raised. Stringer v. State, 557 So.2d 796, 797-98 (Miss. 1990); Jackson v. State, 580 So.2d 1217, 1219 (Miss. 1991); Bryant v. State, 427 So.2d 131 (Miss. 1983); Hollingsworth v. State, 392 So.2d 515 (Miss. 1981).
In this case, a jury could not have reasonably inferred that Taylor was in possession of crack cocaine with intent to distribute. While the evidence presented by the prosecution may have caused the jury to suspect that Taylor intended to distribute the four rocks of crack cocaine, the evidence was not sufficient to establish that Taylor did, in fact, distribute or intend to distribute crack cocaine. Moreover, although Taylor was in an area known for the sale of crack cocaine, in the presence of a drug dealer, with one hand extended into a car and money in the other hand, those circumstances are not sufficient for a jury to conclude beyond a reasonable doubt that Taylor intended to distribute crack cocaine, as opposed to purchasing the drug.
In Hicks, this Court held that the evidence was insufficient even though the defendant's conduct "was similar to that of others who traffic in drugs, and the cocaine was packaged in individual packets." On the other hand, as the dissent accurately notes, we have on facts not dissimilar to those in the instant case affirmed a conviction. Boyd v. State, 634 So.2d 113 (Miss. 1994). There, after an apparent drug deal, officers gave chase to Boyd, who fled on their arrival, discarding cocaine during flight. He was chased to his home where he was found *109 hiding. A search disclosed that he was carrying $101 dollars. The similarity to the instant case is that the observing officers could not see whether Boyd delivered or accepted the dope. The dissimilarities are the fact that, here, the person in the car, not Taylor, was the known dealer. There was as much loose money, twenty dollars, in the car as was found outside the car attributable by inference to Taylor, twenty-six dollars. There were drugs found outside the car and drugs and the residue of drugs found inside the car. Additional surrounding facts such as these were not found in Boyd.
The fact that Taylor was in a drug area and leaning into a car may be indicative of a drug transaction, but it gives no clue as to the identity of the seller. No other circumstances are helpful in this determination. Under the circumstances, we are constrained to conclude that the evidence is insufficient to allow the jury to conclude beyond a reasonable doubt that Taylor intended to distribute the four rocks of cocaine.

III.
Taylor contends that a juror, Joseph Haynes, should have been struck for cause because his sister, Glenda, was employed as an assistant district attorney. Since Taylor had used all six of his peremptory challenges prior to Haynes' selection as a juror, he claims he was prejudiced by the trial court's refusal to strike Haynes for cause. The State maintains that the fact that the juror's sister was an assistant district attorney does not rise to a challenge for cause, "especially in the light of the assurance by Haynes that he could be a fair and impartial juror." For a complete understanding of the setting, we note that court was working with a limited venire. In fact, the State agreed to limit its peremptory challenges so that a jury could be obtained.
During voir dire, the following took place:
Q. Thank you. Did I overlook anyone? Mr. Ed Peters is the District Attorney in this district. Do any of you know him personally? Mr. Noblin? ... .
A. (Juror Joseph C. Haynes.) Yes. My sister is employed by the District Attorney.
Q. Your sister is what?
A. Employed by him.
Q. Who is that?
MR. HEDGEPETH: That's Glenda.
At close of voir dire by the court, the judge asked the potential jurors:
Do any of you know of any reason why you should not sit in the trial of this case for any reason? Do each of you then tell me at this point, as far as you know at this point, that if you are selected as a juror that you will listen to the witnesses testify and consider the evidence that's introduced, from the evidence decide for yourself what the true facts of the case are, apply the law to the facts as you find them, and follow those rules of law, whether you agree or disagree, and render a fair and impartial decision between the State and the defendant? Is there anyone who cannot do that for any reason? Thank you.
Haynes did not indicate at that time that he could not render a fair and impartial decision.
When the State conducted its voir dire, the prosecutor questioned Haynes about whether his sister would have any effect upon his "decision as to the guilt or innocence of this defendant." Haynes said his decision would not be affected by his relationship to his sister.
During voir dire by the defense, Haynes was asked:
Q. Are you going to able  in the event you are picked on this jury and the jury acquits Barry Taylor, are you going to be able to face Glenda and be able to explain your decision?
A. Yes. We disagree all the time.
Haynes did reveal, however, that he was quite close to his sister, lived two houses away from where she resided and talked to her all the time.
The defense later requested that Haynes be struck for cause "based on his relationship with one of the District Attorneys." The State objected, citing Haynes' affirmation that it would not affect his decision. The court replied:

*110 My first  when he first answered that his sister was an Assistant District Attorney, I agreed with you, and my first impression was that he would have to be excused. But I listened closely and watched him closely as he answered the questions and I was impressed. He stated he could be fair and that he would not have the  in fact he stated, his parting remark was that "we disagree often." So it will be denied.
The state used two of its peremptory challenges. Taylor used all six of his peremptory challenges. After Taylor used his sixth peremptory challenge, Haynes was tendered to the defense and he became juror 12.
Our criminal justice system is geared toward providing a defendant a fair trial. Among the constitutional guarantees aimed at securing a fair trial is the requirement of Article 3, Section 26, Mississippi Constitution, that a defendant is entitled to a "trial by an impartial jury."
Nixon v. State, 533 So.2d 1078, 1084 (Miss. 1987).
The state cites a litany of cases in which this Court has upheld a trial court's refusal to remove potential jurors who are related to law enforcement officials. The state relies on Nixon, 533 So.2d at 1078; Johnson v. State, 512 So.2d 1246, cert. denied 484 U.S. 968, 108 S.Ct. 462, 98 L.Ed.2d 402 (Miss. 1987); Pinkney v. State, 538 So.2d 329 (1988) cert. granted and vacated 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (Miss. 1990).
Although the issue of whether a juror who is related to a law enforcement official should be struck for cause has been repeatedly addressed by this Court, the question of whether a juror who is related to a district attorney should be struck for cause has never been posed. Other courts have addressed the issue.
In Poole v. Alabama, 432 So.2d 514 (Ala. Cr.App. 1983), the court relying on Howard v. State, 420 So.2d 828 (Ala.Cr.App. 1982) stated:
It is not ground for challenge for cause that a juror is related to counsel in a criminal case. Washington v. State, 58 Ala. 355 (1877). That a juror is related to the district attorney or to the prosecuting attorney is no ground for challenge for cause. Frost v. State, 225 Ala. 232, 142 So. 427 (1932). As used in Alabama Code 1975, Section 12-16-150, `prosecutor' means `one who instigates prosecution by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued, or an indictment or accusation is based.' Wright v. State, 40 Ala.App. 263, 269, 111 So.2d 588, cert. denied, 269 Ala. 131, 111 So.2d 596 (1958). `Prosecutor' as used in the statute containing the statutory challenges for cause does not mean the district attorney prosecuting the accused. Acoff v. State, 50 Ala.App. 206, 278 So.2d 210 (1973).
Thus, the Alabama court held that the trial court did not err in denying a challenge for cause involving a venireman, whose second cousin was a district attorney.
In People v. Macrander, 828 P.2d 234 (Colo. 1992), the court reached an opposite holding. It held that "a prospective juror who is related within the third degree by blood, adoption, or marriage to a deputy district attorney presently serving on the staff of the elected district attorney responsible for the criminal prosecution is related to an "attorney of record" for purposes of a challenge for cause under [our statute]."
In reaching its holding, the Colorado Supreme Court stated:
We are also convinced that, in light of the need to eliminate the more subtle forms of bias stemming from a prospective juror's relationship to an interested party or participant in the case, the term "attorney of record" in section 16-10-103(1)(b) [providing that the court should sustain a challenge for cause where the juror is related "within the third degree ... to any attorney of record or attorney engaged in the trial of the case"] should be construed to include any deputy district attorney serving in the office of the district attorney at the time of the voir dire examination, even though the deputy district attorney may not have formally appeared or participated in the case. That construction, we believe, furthers the object sought to be achieved by the challenge for cause and is consistent *111 with the legislative decision to vest reciprocal prosecutorial authority in the elected district attorney and members of the district attorney's prosecuting staff.
828 P.2d at 241.
The reasoning of the Macrander Court is persuasive. Even though the legislature has not codified specific grounds for a challenge for cause, the Macrander reasoning comports with the basis for such challenges. One of the purposes of challenges, for cause and peremptory, is to eliminate jurors who have expressed or implied prejudices, or who may be put in an embarrassing position despite protestations to the contrary. Certainly, a juror who is the brother of an assistant district attorney is in such a position. That he is close to his sister and is her neighbor makes the problem more acute. While we cannot guarantee a defendant a perfect trial, we must endeavor to ensure that every defendant receives a fair trial free of implied bias that arises from the presence of a juror who is related to an attorney employed by the district attorney's office that is prosecuting the defendant.
The challenge for cause should have been sustained. Because it was not, we must reverse the conviction as to possession and remand for a new trial.

IV.
The other assignments of error are either subsumed in the first issue or are without merit. For the reasons stated above the judgment of the trial court is reversed and rendered as to possession with intent to distribute and reversed and remanded as to the offense of possession of cocaine.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, J., concur.
PITTMAN, J., concurs in part and dissents in part with separate written opinion.
McRAE, J., dissents with separate written opinion.
SMITH, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr., J.
PITTMAN, Justice, concurring in part and dissenting in part:
I join as to Issue III only. I would affirm as to Issue II. An assistant district attorney serves at the will and pleasure of the district attorney. It would not please the district attorney for an assistant district attorney's sibling to vote and find a defendant not guilty. In regard to Issue II we must affirm when all the evidence supports that what was seen did in fact happen. The defendants actions fit all the techniques of street sales of narcotics. It is impossible to know everything absolutely, but we may know that if a feathered bird has web feet, a yellow, long flat bill, and makes a usual noise similar to a quack-quack, it is a duck. In fact, the accused may prove that other birds have feathers, yellow bills, or web feet but only the duck puts it all together and the jury may recognize it for what it is. In this case it was street sale of crack cocaine.
McRAE, Justice, dissenting:
This case epitomizes the quagmire we have written ourselves into on the issue of determining intent to distribute illegal drugs. Except when extremely large quantities are involved, we cannot gauge intent by the quantity of a particular drug when a variety of drugs have been seized from the accused. Absent some action by the legislature, the issue of intent either should be left to the jury without a definition or stricken as unconstitutionally vague since intent is not defined. I write, therefore, to note the disturbing inconsistency in our decisions regarding sufficiency of the evidence on the issue of intent. Because our opinions provide no guidance for trial court judges and practicing attorneys on the issue of intent to distribute, I am compelled to dissent.
In the very recent case of Boyd v. State, 634 So.2d 113 (Miss. 1994), the defendant's conviction for intent to distribute cocaine was upheld under extremely similar circumstances to the case sub judice. The only distinction between the two is that Boyd was "allegedly a known drug dealer;" Taylor was not. Boyd was seen by Officer Preston Carter, who had made over one hundred arrests in the area, a part of town widely known for crack cocaine dealing. Boyd, 634 So.2d at 115. Officer Carter observed Boyd standing *112 in the middle of the street alongside a stopped vehicle with his head and hand inside the vehicle. Id. The majority held that by all appearances, Boyd was conducting a drug sale. Id. As Boyd noticed the presence of the officer, he departed from the vehicle and put his hand in his pocket. Id. Officer Carter ordered Boyd to stop, but Boyd ignored the order and began to flee. Boyd, 634 So.2d at 115. Officer Carter pursued Boyd into a nearby house, detained him and found two rocks of cocaine close by. Id.
How can these facts be differentiated from the facts in the case at hand? The simple answer is that they can not. In this case, the same Officer Preston Carter was patrolling the Bailey Avenue area, which is also known for heavy crack cocaine dealing. Officer Carter observed Taylor standing by the front passenger side of a stopped vehicle with his arm partially inside the car window. Once Taylor noticed the police officers, he turned and threw what later was identified as a rock of crack cocaine under the car. The minute distinctions today noted by the majority are insufficient to warrant a different conclusion from that we reached in Boyd. That the person in the car, not Taylor, was a known drug dealer, and that there was cash and drug residue in the car, as well as in Taylor's possession and where he had thrown it should not, in and of themselves, distinguish this case from Boyd.
Both cases involved the popular method of selling crack, which is commonly known as "curb service." The majority in the case sub judice states that, "[g]enerally, drug dealers stand on the corner with a small quantity of crack in their hands or in a small container. When a potential customer drives by, the dealer walks out to the curb and shows the customer what he has." Unlike the majority in Boyd, the majority in this case holds that the jury could not infer from the circumstances surrounding Taylor's arrest that he possessed cocaine with the intent to distribute, as opposed to buying the drugs for his own use. Boyd, on the other hand, held that the facts conformed to the "characteristic street sale of drugs that Officer Carter had routinely observed on Ash Street." Boyd, 634 So.2d at 116.
This Court ought to be consistent in its decision-making, and we are only confusing the attorneys and trial judges who actually try and hear these criminal cases. With our reversal and remand of this case as to the offense of possession of cocaine, we, in effect, are "clogging the system," since our court system indicts criminal defendants based upon the pertinent statutes and this Court's interpretation of such statutes. How is a prosecutor to know what grounds on which to charge a criminal defendant without a chance for reversal? More important, how can a judge decide whether to grant a directed verdict or a JNOV on intent to distribute when presented with this case and Boyd? Clearly, by our decision today, no prosecutor or judge could. Absent some legislative directive clarifying the quantity required to show intent when a market basket of illegal drugs are involved, we should leave issues of intent to the jury or strike that portion of the statute dealing with intent as unconstitutionally vague. Accordingly, I dissent.
SMITH, Justice, dissenting:
The majority's analysis of Boyd v. State, 634 So.2d 113 (Miss. 1994), distinguishing the facts of that case from the case at bar is correct. However, I disagree with the majority's reversal of the case under Issue III. Sufficient evidence exists showing that Taylor was in possession of rock cocaine. Remand for resentencing for the lesser offense of simple possession would suffice.
Admittedly, the case resembles Boyd. Both cases originated in the same general area of Jackson and involved the same police officer. However, the majority correctly points to the noticeable absence of the characteristic "curb service" sale of drugs in an area known for such activity, as demonstrated in Boyd. In the case sub judice, the known drug dealer was the person in the car, not Taylor. Similar quantities of money and drugs were found both inside and outside of the car. Contrary to Boyd, there simply is no clue whatsoever to the identity of the seller in this case. The seller could just as likely have been the occupant of the vehicle as Taylor. This Court has previously noted its difficulty in dealing with the intent to distribute issue as reflected in Stringfield v. State, 588 So.2d 438, 440 (Miss. 1991), wherein we stated:

*113 [P]roof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in fact intend to distribute or sell the cocaine, not that he might have such intent. It must be evidence in which a reasonable jury can sink its teeth.
634 So.2d at 129.
Herein, the proof of possession of crack cocaine is more than sufficient to sustain the conviction against Taylor with remand for resentencing. In Murray v. State, 642 So.2d 921, 922 (Miss. 1994), it was noted that "where the Court has found the proof insufficient to support a charge of possession with intent to distribute, this Court has remanded the case for resentencing on the lesser included offense of possession." Id. at 924. See Miller v. State, 634 So.2d 127 (Miss. 1994); Jones v. State, 635 So.2d 884 (Miss. 1994). See also, Jowers v. State, 593 So.2d 46 (Miss. 1992); Thomas v. State, 591 So.2d 837 (Miss. 1991); Jackson v. State, 580 So.2d 1217 (Miss. 1991).
The majority's decision to reverse Taylor's conviction for the failure of the trial judge to strike for cause Juror Haynes, the brother of an assistant district attorney, is most disturbing. The majority has set out factual details of this issue which are more than adequate for the dissent to rely upon. I take issue with the majority's adoption of the holding established in People v. Macrander, 828 P.2d 234 (Colo. 1992). I would continue to adhere to the litany of cases in which this Court has upheld a trial judge's refusal to strike for cause potential jurors who affirmatively maintain that they could be fair, and impartial and not allow a family relationship to influence that their decision as to the guilt or innocence of the accused. Nixon v. State, 533 So.2d 1078, 1084 (Miss. 1987); Johnson v. State, 512 So.2d 1246 cert. denied 484 U.S. 968, 108 S.Ct. 462, 98 L.Ed.2d 402 (Miss. 1987); Pinkney v. State, 538 So.2d 329, (1988) cert. granted and vacated 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (Miss. 1990).
Additionally, I would adopt the holding of our sister state, wherein the Alabama Court held that a trial court did not err in denying a challenge for cause, for the reason that a potential juror was a second cousin to the district attorney. Poole v. Alabama, 432 So.2d 514 (Ala.Cr.App. 1983), relying on Howard v. State, 420 So.2d 828 (Ala.Cr.App. 1982).
In the case sub judice, Juror Haynes' sister, although admittedly an assistant district attorney in the Seventh Circuit Court District, was not involved in the actual prosecution of Taylor's case. The record indicates Assistant District Attorney Hedgepeth was the prosecutor. The learned trial judge was in a much better position than this Court to observe the demeanor of Juror Haynes and weigh his responses to all questions posed during voir dire. The trial court concluded that there was no expressed or implied bias or prejudice by Haynes towards Taylor. There is nothing in the voir dire examination as demonstrated by the record that indicates Juror Haynes could not be fair and impartial.
I respectfully dissent and would remand for resentencing for the offense of simple possession.
JAMES L. ROBERTS, Jr., J., joins this opinion.