# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CT-01561-SCT

*JOHNNY POOL a/k/a JOHN VANSLYKE POOL, III*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/1997 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | JEANNENE PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 08/17/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Johnny Pool seeks review of his convictions for burglary of a dwelling and grand larceny. Pool alleges several errors, all of which are without merit except for his argument that his conviction for burglary of a dwelling cannot stand due to insufficient proof. We granted certiorari, and after consideration agree that there was insufficient proof that the site of Pool's burglary qualifies as a dwelling. Pool's conviction for grand larceny is affirmed, while his conviction for burglary of a dwelling must be reversed and rendered.

### I.

¶2. On December 24, 1996, Lamar Crotts, along with his nephew, Gary, filed a report with the Ellisville Police Department stating that Crotts's house off of Highway 588 outside Ellisville, Mississippi, had been burglarized. Items were also stolen from an unenclosed shed attached to this house. Some of the items that were taken from the shed were a Gravely walk-behind tractor, a cultivator and a Yazoo Big Wheel lawn mower. Furniture, jewelry, firearms, and other items were taken from the house.

¶3. The Ellisville Police Chief, R.L. Jenkins, received an anonymous telephone call on December 29, 1996.

The caller stated that items reported stolen from Lamar Crotts's house were located at a home at the corner of Dubose Street and Deason Street in Ellisville. Jenkins, with Officer Terry Yates, went to the residence on December 30, 1996. The officers saw a Gravely tractor and Yazoo Big Wheel lawn mower next to the house. Jenkins and Yates knocked on the door and Johnny Pool answered. Jenkins asked Pool about the items in the yard and Pool responded that the items belonged to his father. Jenkins testified that he read Pool his *[Miranda](Miranda)* rights and Pool responded that he had taken the items from Crotts's house. Pool stated that he knew his rights, and that if the officers gave Pool some time he would bring the items to the police station. Later on that same day, Pool returned some of the items taken from Crotts. Johnny Pool was not arrested until January 8, 1997.

¶4. The State called Carl and Benjamin Kelly, a father and son, who testified that they bought some of Crotts's stolen property from Pool. Lamar Crotts testified next for the prosecution and identified some of the missing items.

¶5. The defense did not call any witnesses. Johnny Pool was convicted of one count of burglary of a dwelling and one count of grand larceny.

¶6. The Court of Appeals affirmed the convictions by a vote of 4-4, with two Judges not participating. ***Pool v. State***, No. 97-KA-01561-COA (Miss. Ct. App. 1999). Presiding Judge King dissented, saying that allowing the indictment to be amended to show the correct address amounted to reversible error and warranted a new trial. Chief Judge McMillin, along with two others, separately dissented, finding that there was insufficient evidence to support Pool's burglary conviction, because the evidence showed that the structure that was burglarized was no longer being used as a dwelling house by Lamar Crotts.

## II.

¶7. Johnny Pool first argues that the circuit court erred in denying his challenge for cause of Susan Shoemake, the daughter of an Ellisville police officer. During voir dire, the circuit court asked if anyone knew anything about the case, and Shoemake raised her hand. While there was a general statement by the circuit court judge that Ms. Shoemake knew "a lot of things about what's going on in law enforcement," there was nothing specific showing that she had any detailed knowledge of this case. Her police officer father was not a witness at trial and there was nothing to show that he had worked on the case.

¶8. Pool cites ***Scott v. Ball***, 595 So.2d 848 (Miss. 1992), and ***Taylor v. State***, 656 So.2d 104 (Miss. 1995). ***Scott*** was a civil case dealing with ***Batson*** challenges and is not particularly applicable. ***Taylor*** dealt with a juror who had a sister serving as assistant district attorney, and this Court found reversible error in failing to strike the juror for cause. The Court of Appeals relied on ***Mhoon v. State***, 464 So.2d 77 (Miss. 1985), where this Court found that law enforcement officers or their relatives normally could sit as jurors if otherwise qualified. In ***Mhoon*** it was the abnormally large number of these persons on Mhoon's venire that resulted in reversible error. We find no reversible error here.

## III.

¶9. Two issues are presented here. The first deals with the indictment in this case, which stated that Johnny Pool broke and entered the "dwelling house of Lamar Crotts, located at 110 Lee Street, Ellisville, Jones County." During the trial it became evident that the break-in had occurred at a location outside of Ellisville off of Highway 588. This was Crotts's farm, where he had lived until his health had worsened and he had

moved, about four years prior to the break-in, into an apartment at 110 Lee Street, which was owned by Crotts's nephew. Crotts stated that he would still check on his farm property every ten days or so. Just before resting its case in chief the State moved to amend the indictment to show the correct address. Pool objected. The trial court allowed the amendment.

¶10. In *Eakes v. State*, 665 So.2d 852, 859 (Miss. 1995), this Court stated:

> An indictment may only be amended at trial if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment. *Griffin v. State*, 584 So.2d 1274, 1276 (Miss. 1991). However, amendments as to the substance of the charge must be made by the grand jury. The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made. *Id., See also Shive v. State*, 507 So.2d 898, 900 (Miss. 1987).

¶11. In *Eakes* this Court found that an indictment amended to change the offense in question from sexual battery to attempted sexual battery was not error, where Eakes had notice of the possible attempt charge and his defense was still available after the amendment. *See also Rhymes v. State*, 638 So.2d 1270 (Miss. 1994)(amendment which changed crime from sexual battery of female under fourteen years of age to sexual battery of female over fourteen years of age negated Rhymes's defense and was improper); *Brewer v. State*, 351 So.2d 535 (Miss. 1977)(amendment which added name of illegal drug to indictment was substantive and improper); *Parchman v. State*, 279 So.2d 602 (Miss. 1973)(amendment to show correct name of victim allowable where grand jury intended this); *Shelby v. State*, 246 So.2d 543 (Miss. 1971) (amendment to show correct date of offense not error).

¶12. Johnny Pool never testified so it is difficult to know what defense he might have raised, but he offers no argument as to how he was prejudiced by the amendment. We find no error arising from the amendment of the indictment.

¶13. In his dissent, Chief Judge McMillin stated that the State had failed to prove that Crotts's building, which was alleged to have been burglarized, was a dwelling house, and therefore Pool's burglary conviction should be reversed and rendered. This issue was not raised on direct appeal by Pool, and was noticed by Chief Judge McMillin as plain error on appeal. The cases cited by Chief Judge McMillin support such a conclusion. In *Haynes v. State*, 180 Miss. 291, 177 So. 360 (1937), Haynes was convicted of burglarizing Mrs. Hollingsworth's dwelling house. On appeal this Court noted that Mrs. Hollingsworth had moved out of the dwelling in question, along with most of her belongings, the day before the burglary. She stated that she had left with no intention of living in the dwelling any more. This Court reversed Haynes's conviction. *See also Course v. State*, 469 So.2d 80 (Miss. 1985)(house in question qualified as dwelling house where owner was in nursing home at the time of the burglary and intended to return).

¶14. The burglary statute in effect at the time of this incident was Miss. Code Ann. § 97-17-23 (Supp. 1999), which states:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.

¶15. In this case there was no evidence that Lamar Crotts ever intended to return to his farm to make it his dwelling. Pool's conviction for burglary of a dwelling must be reversed and rendered.

### IV.

¶16. Johnny Pool's final issue deals with double jeopardy. Pool's indictment alleged that he, on or about December 24, 1996, committed two crimes: (1) burglary of the dwelling house of Lamar Crotts and (2) grand larceny of Gravely Tractor and a Big Wheel Yazoo push mower. Officer Terry Yates described the Crotts's property off of Highway 588 as follows: "[T]here's a big white house, the main house, and then out to the right of it, if you are facing it, out to the right there is another smaller house and it's got a shed that comes off of the back of it like a lean-to shed." The tractor, mower and cultivator had been taken from this shed. It appears that Lamar Crotts referred to the shed as a "little red house" or garage.

¶17. Pool's argument appears to be that the shed was part of the curtilage of the property, and that once Pool broke and entered what had been the dwelling house, this served to convert all his subsequent criminal actions on the property into one burglary, including his actions which made up the count of grand larceny. Pool cites *White v. State*, 702 So.2d 107, 109 (Miss. 1997), which deals generally with double jeopardy. *White* includes the "same elements test," such that one must inquire as to "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." The Court of Appeals found no double jeopardy violation, stating that "the grand larceny charge did not arise out of a common temporal nucleus of operative facts." *Pool v. State*, No. 97-KA-01561-COA at ¶ 25 (Miss. Ct. App. 1999).

¶18. Burglary consists of breaking and entering the dwelling house of another with intent to commit some crime therein. Grand larceny consists of taking and carrying away, feloniously, the personal property of another. These crimes have different elements, and prosecuting Pool for both does not violate the prohibition against double jeopardy.

### V.

¶19. Johnny Pool's conviction for grand larceny is affirmed. As the record clearly shows that Lamar Crotts's house outside Ellisville was not a dwelling house at the time in question, Pool's conviction for burglary of a dwelling is reversed and rendered. Accordingly, the judgments of the Court of Appeals and the Jones County Circuit Court are affirmed in part and reversed and rendered in part.

¶20. **AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., PITTMAN, P.J., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**