# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 98-KA-00199-COA

**DAVID GEROME MITCHELL, A/K/A "BAYROME"**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/30/1998 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SCOTT WATSON WEATHERLY JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | CONO A. CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 01/30/1998: POSSESSION OF CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE:(HABITUAL OFFENDER) SENTENCED TO SERVE A TERM OF THIRTY YEARS IN THE CUSTODY OF THE MDOC TO SERVE DAY FOR DAY WITHOUT HOPE OF PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED IN PART - 11/16/99 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | 12/07/99 |

EN BANC.

IRVING, J., FOR THE COURT:

¶1. David Gerome Mitchell was convicted in the Circuit Court of Harrison County as a habitual offender of possession of cocaine with intent to distribute. Feeling aggrieved, he appeals and raises the following issues which are taken verbatim from his brief:

**I. THE LOWER COURT ERRED IN NOT SUSTAINING MITCHELL'S MOTION FOR A**

**DIRECTED VERDICT AS THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE STATE'S THEORY OF CONSTRUCTIVE POSSESSION**

**II. THE LOWER COURT ERRED IN NOT SUSTAINING MITCHELL'S MOTION FOR A DIRECTED VERDICT AS THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER**

Finding no merit in Mitchell's first issue but finding merit in his second issue, we affirm in part and reverse in part.**Facts**

¶2. Pursuant to a domestic violence call from a Tasha Turner, a friend of Natasha Porter, Deputy Leonard Bentz of the Harrison County Sheriffs Department went to the W.A. Ladner Apartments in Gulfport and spoke with Natasha Porter who informed him that she and her boyfriend, David Mitchell, had been involved in an altercation and that Mitchell was on the other side of the vehicle which was parked on the side of the house. While Porter and Bentz were talking, Sergeant Mark Hoskins, who also responded to the call, arrived at Porter's duplex. Sergeant Hoskins testified that as he was pulling into the driveway of the duplex, he saw Mitchell duck down beside a parked car. Hoskins testified that he called Mitchell by name; however, Bentz and Mitchell testified that Hoskins called Mitchell by Mitchell's nickname, Bayrome. In any event, while Hoskins distracted Mitchell, Bentz went around to the other side of the parked car and took Mitchell into custody for domestic violence. Mitchell testified that Hoskins told him to get on the ground and Bentz attacked him, knocking him to the ground. While Mitchell was being handcuffed by Bentz, Hoskins, using Hoskins's flashlight, started searching the immediate area.

¶3. During the search, Hoskins spotted a spare tire a short distance from where Mitchell was arrested, shined his flashlight in the direction of the tire and noticed something that was not a part of the tire. He lifted the tire and found a bag containing 7.1 grams of cocaine formed to resemble one-half of a homemade cookie. Mitchell, at the time of his arrest, had been in the process of changing his tires which had been cut by Porter. As a result of the discovery of the cocaine, Mitchell was charged with possession of cocaine with intent to distribute.

¶4. At trial, the State presented the testimonial evidence of Bentz, Hoskins and Ricardo Dedeaux, along with the cocaine, and certified copies of two felony convictions obtained against Mitchell in 1986: one for possession of a controlled substance with intent to distribute and one for sale of a controlled substance. The previous convictions were admitted into evidence, with the proper cautionary instruction, for the limited purpose of proving the intent to distribute the cocaine in question. Dedeaux's testimony was that Mitchell admitted ownership of the cocaine shortly after Mitchell was taken in to custody.

¶5. The defense presented the testimonies of Porter and Mitchell who testified in his own defense. Porter testified that she did not see any crack cocaine lying around Mitchell's car when she slashed his tires. Mitchell testified that after seeing Porter slash his tires, he got mad, pushed her out of the way, popped the trunk of his car, took out his spare tire, kicked the tire and prepared to change the rear passenger tire of his car. As he prepared to change the tire, he noticed the other rear tire was also flat. He further testified that the spare tire which he had kicked came to rest nine or ten feet from where he was kneeling to change the rear tire. Mitchell denied that he possessed the cocaine and also denied telling investigator Dedeaux that the cocaine belonged to Mitchell.

¶6. Mitchell was found guilty of possession of cocaine with intent to distribute and sentenced as a habitual offender to thirty years in the custody of the Mississippi Department of Corrections. Mitchell's post-trial motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, was denied. Thereafter, he perfected this appeal.

## DISCUSSION OF THE ISSUES

### *I. Sufficiency and Weight of the Evidence on the Element of Possession*

#### Standard of Review

¶7. When there is a challenge to the sufficiency of the evidence, we may reverse only where, in consideration of all of the evidence at the close of the trial, we are convinced that reasonable and fair-minded jurors could only find the accused not guilty of the offense with which he is charged. *Weltz v. State*, 503 So. 2d 803, 808 (Miss. 1987), *Harveston v. State*, 493 So. 2d 365, 370 (Miss. 1986). A motion for a new trial implicates the discretion of the trial court and seeks to procure a new trial on the theory that, while there is some evidence in support of the conviction of the accused, the verdict of the jury is against the overwhelming weight of the entire evidence. We, sitting as an appellate court, will not reverse the trial court's denial of a motion for a new trial unless there has been a manifest abuse of that discretion. *Quinn v. State,* 479 So. 2d 706, 709-10 (Miss. 1985).

¶8. Having set forth the parameters of our reviewing power, we now turn to the application of those standards to the factual issues involved. As stated, Mitchell challenges both the sufficiency and weight of the evidence as to the element of possession. His contention is that the cocaine was found on the ground under a tire some five to ten feet away, and that since the cocaine was not found on his person, the State was required to prove that he constructively possessed the cocaine, a burden which he contends the State wholly failed to carry. We agree that the State was required to prove constructive possession, but we disagree with Mitchell's assertion that the State failed to meet its burden of proof in this respect.

¶9. Before we proceed to a discussion of the law on constructive possession, we review some facts already stated as well as some additional relevant facts. The cocaine was found under the spare tire which Mitchell had taken out of the trunk of his car. As Officer Hoskins drove into the driveway of Porter's duplex, he saw someone duck behind a vehicle in the parking lot of the residence where Deputy Bentz was located. Hoskins immediately confronted this individual who turned out to be Mitchell. At that time, Officer Hoskins did not see any other people in the area. Hoskins testified that Mitchell was right beside the tire when he first saw Mitchell and that Mitchell had to walk around the tire to arrive at the location where he was taken into custody. Bentz testified that when he took Mitchell into custody, Bentz did not see anybody at the immediate scene although he might have seen some people when he pulled into the Ladner housing project area. He also testified that the spare tire was within a five foot radius or a little more of Mitchell.

¶10. In *Cunningham v. State*, 583 So. 2d 960, 962 (Miss. 1991), the Mississippi Supreme Court, quoting *Curry v. State,* 249 So. 2d 414 (Miss. 1971), provided the following guidance on what must be proven to warrant a finding that a defendant has constructive possession of contraband not found on his person:

> [T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need

not be actual physical possession. Constructive possession may be shown by establishing dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

However, when contraband is found on premises which are not owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession. *Cunningham*, 583 So. 2d at 962. The State must show additional incriminating circumstances to justify a finding of constructive possession, and where the premises is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband. *Id.* at 962, (quoting Fultz *v. State*, 573 So. 2d 689, 690 (Miss. 1990)); *Powell v. State,* (citing *Sisk v. State,* 290 So. 2d 608, 610 (Miss. 1974)). In the case *sub judice*, that link of competent evidence is the testimony of Dedeaux that Mitchell admitted possession of the cocaine. Although Mitchell vigorously denied that he made such an admission, nevertheless, the jury was entitled to believe Dedeaux over Mitchell, and we are without power to interfere with their finding. Therefore, we are unable to conclude that fairminded jurors could have only found Mitchell not guilty or that the trial judge abused his discretion in denying Mitchell's motion for a new trial after the jury found him guilty.

## II. Sufficiency and Weight of the Evidence on the Element of Intent to Distribute

¶11. Mitchell also contends that even if the evidence was sufficient to prove that he constructively possessed the cocaine, the evidence offered against him is insufficient to sustain a conviction for possession with intent to distribute because the only evidence offered as proof of intent was the amount of the cocaine and two prior drug convictions: one for sale and the other for possession with intent to distribute. Mitchell further argues that the amount of cocaine found in his possession was consistent with personal use and that when the amount in possession is consistent with personal use, there must be other evidence of proof of intent to distribute. He then concludes that no legally sufficient evidence was offered to prove intent because evidence of prior drug sales alone is never legally sufficient to prove intent when the amount of contraband in question is consistent with personal use. On the authority of *Smith v. State*, 656 So. 2d 95 (Miss. 1995) , which we will discuss later, we are compelled to agree with Mitchell on this point.

¶12. The amount of cocaine found under the tire was 7.1 grams or .2485 percent of an ounce. The Mississippi Supreme Court has held that where the controlled substance is in an amount which a person could reasonably hold for personal use, other evidence must be adduced to support a conviction of possession with intent to distribute or sell. *See, e.g., Bryant v. State*, 427 So. 2d 131, 378 (Miss. 1983). We also conclude on the authority of *Smith* that slightly less than one fourth of an ounce of cocaine is consistent with personal use.

¶13. In an effort to prove that the amount found on Mitchell was inconsistent with the amount one would possess for personal use, the State offered the testimony of Investigator Dedeaux that in his opinion the amount of cocaine found under the tire was not consistent with personal use because of the shape of the cocaine. Dedeaux further opined that the cocaine in solid form was worth approximately $700 and that a typical user would keep no more than $50 to $100 worth of cocaine on his person. Dedeaux also testified that if the solid cocaine cookie was cut into portions for street sale one could get a lot more for it, possibly double his money. He further testified that "if you break it down into twenties, you can probably get 50 some 20's out of there, you can sell it for $1,500." He then testified that a twenty is about one fourth of a gram but that the crime lab weighs out .5 grams as one rock. Dedeaux did not say whether a twenty and

rock are one and the same.

¶14. Accepting Dedeaux's testimony -- that one fourth of a gram of cocaine constitutes a twenty and that the State crime lab considers a rock to be one half of a gram -- as true, Mitchell could have cut the half cocaine cookie into approximately twenty-eight twenties or fourteen rocks, not the fifty plus pieces to which he also testified could be obtained from the half cookie. But when the math is applied to Dedeaux's numbers, it is readily apparently that his testimony is self-contradictory in other aspects as well. First, twenty-eight pieces at $20 per piece would bring only $560 on the streets, not $1,500 as contended by Dedeaux, and if the weight of a rock of cocaine is .5 gram as measured by the State crime lab, and if it is in fact a rock that is sold as a twenty, then Mitchell's half cookie of cocaine would bring him only $280 on the streets. Further, taking Dedeaux's other testimony as true that the cocaine would cost $700 in the solid form in which it was found, it defies imagination why a street dealer would purchase the cocaine for $700 and resell it for either $560 or $280. He certainly could not remain in business for long. In any event, the point of the mathematical analysis is to show that the totality of Dedeaux's testimony destroys the hypothesis he posited -- that Mitchell possessed the cocaine with intent to distribute because the amount of cocaine was such that it could be cut in smaller pieces and sold for a profit.

¶15. In *Murray v. State,* 642 So. 2d 921 (Miss. 1994), the Mississippi Supreme Court found that possession of fifteen rocks of cocaine, along with $515 in small denominations, were not sufficient to support a conviction of possession with intent to deliver. In *Smith*, as discussed below, sixteen pieces of cocaine were found insufficient to sustain a conviction of possession with intent to distribute. Since the actual weight of the fifteen pieces in *Murray* and the sixteen pieces in *Smith* is not given, we are unable to compare the weight of the cocaine in those cases to the weight of the cocaine here. However, we see no reason to conclude that what the state crime lab considers to be a rock is different from what is actually sold as a rock on the streets. After all, the crime lab certainly has examined and weighed many pieces of rock cocaine being sold on the streets. In any event, as our mathematical analysis shows, the State certainly did not prove intent with the testimony of Deputy Dedeaux. Thus, based on Mississippi Supreme Court precedent in *Murray* and *Smith*, we find the amount of cocaine alone possessed by Mitchell was insufficient to support his conviction of possession with intent to distribute.

¶16. The other piece of evidence offered to support the conviction was, as stated, the two prior drug sales. Mitchell argues that his two prior convictions occurring in 1986, almost ten years prior to the date of the commission of the crime here and more than eleven years prior to the trial, were inadmissible. The trial court admitted the evidence of the convictions under M.R.E. 404(b) after performing the balancing analysis required by M.R.E. 403. The trial court also gave the required limiting instruction. It is settled in Mississippi jurisprudence that under M.R.E. 404(b) evidence of prior sales is admissible to show or prove intent to distribute. *Swington v. State*, 97-KA-00591-SCT (¶17) (Miss. June 17, 1999); *Smith v. State*, 656 So. 2d 95, 99 (Miss. 1995). What is not well settled or clear is whether there is a time limit with respect to how old the prior conviction may be.

¶17. We have been unable to find any Mississippi Supreme Court case squarely addressing this point. In *Swington*, evidence of a six year old prior conviction was held to be admissible. *Id.* at (¶16-17). In light of clear authority that evidence of conviction of a defendant in prior sales is admissible under M.R.E. 404(b) to prove intent to distribute in subsequent sales by the same defendant, we are unwilling at this time to place a time limit on the age of the prior conviction evidence because in our opinion the admissibility of the prior conviction evidence is not outcome determinative in this case. Therefore, we do not disturb the ruling of the

trial judge admitting the evidence of the prior sales convictions. However, while we do not hold that the prior convictions were inadmissible to show intent to distribute, we do find that that evidence alone is insufficient to prove that Mitchell intended to distribute the cocaine found in his possession. Authority for this conclusion lies in the teachings of *Smith* where the court -- after holding that evidence of prior sales is admissible to show that present possession is with the intent to distribute -- taught the following:

> The remaining question in this regard is whether the evidence is sufficient to sustain a conviction of possession with intent to distribute where the only evidence of intent to distribute is evidence of past sales. *We think not.* We conclude that while past drug activity is admissible on this question, past sales alone is an insufficient evidentiary basis for the conclusion that present possession is with the intent to distribute. To do otherwise would be truly to convict on the basis of a propensity.

*Smith,* 656 So. 2d at 100. (emphasis added).

¶18. The question in this case then boils down to this: may a conviction for possession with intent to distribute stand where the only evidence supporting the conviction is (1) evidence of possession of an amount of contraband consistent with personal use and (2) evidence of prior sales of contraband? We are of the opinion that the *Smith* court unequivocally answers the question in the negative.

¶19. In *Smith,* law enforcement authorities served an arrest warrant on one Charles E. Smith as a result of a large-scale "round-up." After his arrest, he was searched and found to be in possession of a vial containing sixteen pieces of crack cocaine, and as a result of the discovery of the cocaine he was charged with possession of cocaine with intent to distribute. *Smith*, 656 So. 2d at 97. During Smith's trial, the trial court, over defense objection, allowed the State to put in evidence, through the testimony of a police officer, that in 1989 Smith had sold the officer cocaine on two occasions while the officer was working undercover. *Id.* at 98. Smith was convicted of possession with intent to distribute. On appeal, the *Smith* court held the evidence of the prior sales was properly admitted but reversed Smith's conviction for possession with intent to distribute, finding that (a) "Smith's possession of cocaine was unremarkable in either quantity or circumstance," (b) "[t]he amount involved [sixteen pieces] was no more than could be expected for personal use," and (c) the prior-sales evidence was insufficient to sustain the conviction. *Id.* at 99-100.

¶20. In the case at bar, as in *Smith,* the amount of cocaine was unremarkable in quantity or circumstances. In fact, in our case, the circumstances are even less remarkable because in *Smith,* the cocaine was found on Smith's person, while in our case, the cocaine was found on the ground. The amount here is also less, fourteen pieces if cut into .5 gram twenties or pieces, while in *Smith* there were sixteen pieces. In *Smith,* the prior sales were two years or less previous to the present possession, while here the prior sales convictions are nine years previous to the present possession and more than eleven years prior to the present trial. Here, we do not know the exact date of the commission of the crimes evidenced by the prior sales convictions, but we do know that the crimes had to be committed prior to the convictions. Hence, the sales may have been more than ten years old.

¶21. We are compelled to conclude that the evidence offered here to prove intent to distribute is just as deficient as was the evidence in *Smith*. However, we do find the evidence sufficient to support a conviction for possession of cocaine. Consequently, we reverse and remand for re-sentencing on possession, as that charge is a lesser-included offense of the charge of possession with intent to distribute. Of course, Mitchell may still be sentenced as a habitual offender.

**¶22. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL OFFENDER TO SERVE A TERM OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION ARE AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT IS AFFIRMED AS TO POSSESSION OF A CONTROLLED SUBSTANCE AS A HABITUAL OFFENDER BUT REVERSED AS TO POSSESSION WITH INTENT TO DISTRIBUTE AS A HABITUAL AND REMANDED TO THE CIRCUIT COURT OF HARRISON COUNTY FOR SENTENCING AS A HABITUAL OFFENDER TO THE LESSER INCLUDED OFFENSE OF POSSESSION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, LEE AND MOORE, JJ., CONCUR. BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PAYNE AND THOMAS, JJ.**

BRIDGES, .J., DISSENTING:

¶23. I respectfully dissent from the majority's conclusion that the State failed to submit legally sufficient evidence to prove Mitchell intended to distribute the cocaine he possessed on September 13, 1995. I believe that both the weight and form of the cocaine, coupled with Mitchell's previous guilty pleas to similar crimes form the solid basis needed to support the evidentiary standard necessary to affirm the lower court.

¶24. When reviewing the weight and sufficiency of the evidence, it is our duty to view the evidence in the light most favorable to sustaining the jury's verdict. *Gossett v. State*, 660 So.2d 1285, 1294 (Miss.1995). Only if we are convinced, after viewing the evidence in this light, that a manifest injustice has occurred are we permitted to intercede. *Id.* at 1294. In evaluating the proof, we must be mindful of a maxim near and dear to the heart of jurisprudence. That maxim provides that it is the province of the jury to observe and listen to the witnesses, assess their credibility, and ultimately decide what weight and worth to give to any particular evidence. *Id.* at 1294. It is also the duty of the jury, when faced with competing versions of events, either of which appears plausible based on the evidence presented, to decide which version it chooses to believe. *Gandy v. State*, 373 So.2d 1042, 1045 (Miss.1979)(citing *Shannon v. State*, 321 So.2d 1, 2 (Miss.1975)). Further, in *Williams v. State*, 427 So. 2d 100, 104 (Miss. 1983), our supreme court held that jurors may accept or refuse testimony of witnesses stating, "It is not for this Court to pass upon the credibility of witnesses and where the evidence justifies the verdict it must be accepted as having been found worthy of belief."

¶25. The standard of review for challenges to the sufficiency of the evidence was summarized by the Mississippi Supreme Court in *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993):

> The three challenges by McClain (motion for directed verdict, request for peremptory instruction, and motion for JNOV) challenge the legal sufficiency of the evidence. Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled McClain's motion for JNOV. In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with McClain's guilt must be accepted as true. The prosecution must be given the benefit of

all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

(citations omitted).

¶26. When a defendant contends that a new trial should have been granted because the jury verdict was against the weight of the evidence, the standard of review is as follows:

[T]he challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes [Mississippi Uniform Criminal Rule of Circuit Court Practice] 5.16. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State.

*McClain*, 625 So. 2d at 781. All matters concerning the weight and credibility of the evidence are resolved by the jury. Applying these standards, I find it impossible to say the jury verdict was not supported by evidence sufficient to sustain Mitchell's conviction.

¶27. Mitchell argues the Court should reverse on the grounds that there was insufficient evidence of intent to distribute. Mitchell relies on *Stringfield v. State*, 588 So. 2d 438 (Miss.1991), in support of his contention that the evidence was insufficient. In the *Stringfield* case*,* Stringfield had cocaine in powder form that he wished to convert into rock form. An acquaintance, Fairley, took him to someone with the requisite expertise who converted the powder cocaine into rock cocaine. Stringfield gave portions of the rock cocaine to the person who performed the conversion and to the "middle man", Fairley, who introduced them. On their way back to their respective residences, Stringfield's car was stopped, and he was arrested on a separate charge. Of course, the rock cocaine was found on both Stringfield and Fairley, his passenger. Fairley testified against Stringfield, and thus Stringfield was charged with felonious intent to distribute cocaine based solely upon the fourteen grams of cocaine Stringfield possessed at the time of his arrest. The supreme court held that proof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion:

There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell the cocaine, not that he *might* have such intent. It must be evidence in which a reasonable jury can sink its teeth.

*Stringfield*, 588 So. 2d at 440 (emphasis in original). The supreme court reversed the lower court regarding the intent to distribute charge. The court noted that while it is correct that criminal intent may be shown by surrounding circumstances, the reversal was based upon the fact that no surrounding circumstances from which intent may be inferred were presented against Stringfield. *Id.* at 441.

¶28. In *Miller v. State*, 634 So. 2d 127 (Miss. 1994), Miller was arrested on outstanding warrants by local police officers. During the pat-down at the scene of the arrest, the officer found no weapon but felt what he thought was a matchbox in Miller's pocket. At the police station, however, no matchbox was found. After a brief search of the patrol car which transported Miller to the station, the officer found a

matchbox containing twelve rocks of crack cocaine. The case was submitted to the jury on the theory that Miller had constructive possession of the cocaine and intended to distribute it later because of the quantity and nature of the contraband. There was no other evidence presented indicating that the twelve rocks of cocaine found were intended for sale, except for a police officer's testimony observing that the quantity in question was more than a typical user would have. The supreme court reversed and remanded the conviction for intent to sell reasoning that quantity alone would not be sufficient to sustain a conviction. *Miller*, 634 So. 2d at129.

¶29. Later in *Murray v. State*, 642 So. 2d 921 (Miss. 1994), the supreme court addressed specifically the sufficiency of a conviction based upon the quantity of a controlled substance alone. George Murray was arrested when a local police officer recognized him and noted that there was an existing warrant for his arrest. While performing the pat-down search, the officer found a small black container in Murray's shirt pocket that contained fifteen rocks of crack cocaine and $515 in cash in small denominations. In reversing the intent to deliver charge leveled against Murray, the court surmised that no testimony connected Murray with any activity evidencing a drug sale and that the arresting officer based his conclusion that Murray was a drug trafficker solely on the amount of cocaine found and the denominations of the money. *Id.* at 924.

¶30. While Mitchell is correct that the supreme court has held in some cases that quantity alone might not be enough to establish intent to distribute beyond a reasonable doubt, the supreme court, in other cases, has held that the quantity and nature of the drug may be enough to establish intent. *Taylor v. State*, 656 So. 2d 104 (Miss. 1995). In *Taylor*, the court held:

> Indeed, a jury may reasonably conclude that a defendant intended to unlawfully distribute a controlled substance, if the quantity or nature of the seized substance evidences an intent to distribute--as opposed to an intent to merely possess for personal use. Where the quantity or nature is such that it merely reflects possession for personal use as an intent to distribute, then only a suspicion of intent is raised.

*Id.* at 108 (citations omitted). "The evidence sufficient to infer intent to [deliver] must be evaluated in each case." *Jackson v. State*, 580 So. 2d 1217, 1220 (Miss. 1991). Where contraband is present in an amount which a person could reasonably hold for personal use, other evidence of possible involvement in drug trade may be sufficient to establish intent to deliver. *Jowers v. State*, 593 So. 2d 46, 47 (Miss.1992). Proof of a defendant's intent may be, and often must be, based upon reasonable inferences drawn from circumstantial evidence. *Id.* at 47.

¶31. *Stringfield, Miller* and *Murray* are easily distinguishable from the case at bar. In each of the aforementioned cases, the State rested its case for intent to distribute the controlled substance upon the quantity of cocaine or weight of cocaine without surrounding circumstances that point toward intended sale of the substance as well. The most obvious difference appears in the record from the lower court, when the trial judge carefully considered the arguments presented by both sides concerning Mitchell's prior criminal record involving guilty pleas to charges of sale of a controlled substance and possession of a controlled substance with intent to distribute it. Many of the cases cited by the majority concern convictions reversed based upon a showing of the weight of cocaine *alone* or the defendant's prior record *alone*. Mitchell's situation is distinguishable because it is not an "either/or"case, rather it involves *both* a prior record and the weight of the cocaine. It is essential that one look at these circumstances together to draw the reasonable inferences of intent that *Jowers* describes.

¶32. The majority opinion appears concerned with the remoteness of Mitchell's prior convictions. The majority argues convictions nine years old may be too far removed from the present case to be appropriately considered against Mitchell, citing *Smith's* two year old conviction as reference. The only time limit placed upon a trial court by our rules of evidence is the ten-year rule of M.R.E 609(b), which is inapplicable here. The trial judge dutifully followed the language of *Smith v. State*, 656 So. 2d 95 (Miss. 1995) by conducting a M.R.E.403 balancing test when confronted with the difficult decision of whether or not to allow evidence of prior convictions into evidence. In *Smith*, the supreme court held that evidence of prior sales to show an intent to distribute a controlled substance is not barred by M.R.E. 404 and is properly admissible if it passes muster under M.R.E.403 and is accompanied by a limiting instruction. *Smith*, 656 So. 2d at 99. Further, the court explained that the ultimate resolution of this issue depends upon the purpose for which the testimony is offered, saying with alliterative style, "Propensity is the only proscribed purpose." *Id.* at 99.

¶33. Mississippi Rule of Evidence 403 vests considerable discretion with the trial court in determining what may pass through the Rule 403 filter into evidence. *Hughey v. State*, 729 So.2d 828 (¶ 14) (Miss. Ct. App. 1998)(citing *Hooker v. State*, 716 So.2d 1104, 1111 (Miss. 1998)). During Mitchell's trial, the lower court judge followed the *Smith* analysis saying

> I think it is a close issue, but the Supreme Court, it looks like, has consistently suggested to the trial bench that other evidence of drug dealing is relevant and admissible to show possession with intent. I do recognize the fact that these prior convictions are prejudicial, but based upon the combined direction that the Supreme Court appears to be going in their teachings, the Court is of the opinion that the probative value outweighs the prejudicial value.

The trial court followed this ruling with a limiting instruction to the jury that the testimony involving Mitchell's prior guilty pleas was offered for the limited purpose of proving an intent to distribute the cocaine in question and not for any other purpose. This action by the trial court is perfectly in line with the latest decision handed down by the Mississippi Supreme Court interpreting case law on this issue.

¶34. In *Swington v. State*, 97-KA-00591-SCT (Miss. June17,1999), Jerry Swington appealed his conviction for unlawful possession of cocaine with intent to distribute it within 1500 feet of a church. At trial, proffered testimony showed that Swington was involved in a drug sale approximately thirty minutes prior to being arrested for selling a similar amount to law enforcement officers. *Id.* at (¶10). The supreme court cited with approval the trial court's decision to conduct a M.R.E. 403 balancing test and admitting the evidence of prior bad acts under the umbrella of M.R.E. 404(b) to prove intent. *Id*. at (¶ 11). Our supreme court stated that the trial court cleared the final hurdle by giving the jury a limiting instruction once the testimony was admitted. *Id*. at (¶ 13).

¶35. Examining the facts of this case in the light most favorable to the State, the evidence was sufficient to establish that Mitchell intended to deliver the cocaine. Allison Smith, a forensic chemist with the Mississippi Crime Lab, testified the cocaine weighed 7.1 grams. According to Investigator Dedeaux, the "homemade cookie" form of the cocaine was consistent with the way a dealer acquires his supply. The cookie is cut into rock size pieces, known as twenties, for resale on the street. The 7.1 grams of cocaine in solid form was valued at approximately $700. A typical user would keep no more than $50 to $100 worth of cocaine on his person. Investigator Dedeaux opined that, based on his experience and training, the quantity (7.1 grams) , form (solid cookie shape), and value ($700) of the cocaine found in Mitchell's possession indicated that

the substance was for distribution and not for personal use.

¶36. The majority relies heavily on *Smith* and leaves *Taylor, Jackson* and *Jowers* unaddressed. The circumstances in Mitchell's case are distinguishable in that the cocaine in *Smith* was found in rock form, not in cookie form. *Smith* also fails to disclose the weight of the sixteen pieces of cocaine found there. The majority states that the sixteen pieces found in *Smith* if assumed to be .5 grams (Dedeaux testified rocks were occasionally that weight) were less than what Mitchell had. What if the rocks were "twenties" or .25 grams or .75 grams? The point is that we simply do not know. It would seem that the majority is comparing apples to oranges, but it is impossible to do so when you cannot tell what is an apple and what is an orange. The majority's dissection of Dedeaux's testimony amounts to little more than algebraic gymnastics, deftly bypassing some of Dedeaux's early testimony in favor of Dedeaux's later testimony. It is my opinion that in doing so the majority treads roughly over the sacrosanct nature of the jury as the finder of fact. It is simply not our place to do so. Dedeaux made contradictory statements in his testimony. I feel safe in saying that he is not the first witness to do so, nor will he be the last. The majority's view regarding how Mitchell planned to divide the cocaine is highly speculative. There is no way to discern whether Mitchell would have made the rocks of cocaine weigh .5 grams or .25 grams. The sale of cocaine is by no means scientific and reliance on an industry standard, so to speak, is misplaced especially in light of what the majority points out as "contradictory" testimony. It is for the jury to decide who and what is worth believing.

¶37. Mitchell's previous guilty pleas on the charges of sale of a controlled substance and possession of controlled substance with intent to distribute combined with the quantity, nature and value of the crack cocaine passed muster under M.R.E. 403 and 404 in conjunction with a limiting instruction and were sufficient evidence for the jury to draw a reasonable inference of an intention to distribute. The jury weighed the evidence, believed the State's witnesses, reasonably inferred from the evidence that Mitchell intended to distribute the cocaine and therefore convicted him. Viewing the evidence in the light most favorable to the verdict, I believe that the jury verdict was supported by sufficient evidence. Accordingly, I would affirm.

**PAYNE AND THOMAS, JJ., JOIN THIS SEPARATE OPINION.**